Good morning. My name is Peter Sessions. I represent the plaintiff and appellant in this case, John Potter. I'd like to reserve two minutes for rebuttal if I may. This case is about Nicholas Potter, a young man with psychiatric issues who received treatment at a residential treatment facility called Intercept, and about Defendant Blue Shield's refusal to pay benefits for much of his treatment while he was there. And there are three issues that are presented by this appeal. The first one is whether the district court should have admitted a declaration from Nicholas's treating psychiatrist, Dr. Ulrich. The second issue is whether the district court properly ruled that part of Nicholas's treatment was not medically necessary. And the final issue has to do with attorney's fees, and that's an issue on which Blue Shield has crossed the field. Unless the court has a preference, I'd like to begin with the first primary treating psychiatrist while he was at Intercept, and his declaration shows that he was intimately familiar with the treatment that Nicholas took. Was Dr. Ulrich available as a witness at the time of the administrative hearing? I'm not sure what the court means by as a witness. Well, could he write and sign papers and file a declaration at the time of the administrative hearing? Yes, he could. Why didn't he? Why didn't you introduce Ulrich at that time? Well, here's what happened. Did you have a reason for not introducing him? Because you didn't introduce him, the administrative judge made his decision, and you attempted to bring that in at the district court level. What's the reason why you didn't produce Ulrich's declaration at the time of the administrative hearing? The reason that declaration was not produced is because it could not have been produced. Why? Because the declaration was responding to misstatements made by Blue Shield during the administrative process. What happened was this case came to court and the district court remanded it for further review by Blue Shield, and in the course of that review, we arranged for a telephone conference between Blue Shield and Dr. Ulrich and other staff members at Intercept. And it's in the course of that telephone conversation that we argue that the misrepresentations were made by Blue Shield. And specifically what I mean by that is Blue Shield compiled a report at the end of that telephone conversation, and that transcript of that conversation contained inaccuracies. And that's what Dr. Ulrich was responding to with the declaration. I'd like to follow up on this for just a minute. I think we all agree that the district court's review and trial of the matter is confined to what's in the administrative record. You are now saying, as you said in your brief, that the doctor's testimony was not available at the time of the administrative record, and therefore the district court should have The district court's order post-trial is that he found there were already hundreds of pages of Nicholas's medical records in the administrative record, and that it would not have been helpful to him in a bench trial to have the additional testimony from Dr. Ulrich, and so therefore as a matter of discretion, he excluded it. What would be plain about that type of decision, plainly erroneous, that would lead us to have to disturb it? Well, the difficulty is that the district court's basis for excluding the declaration was based solely on the fact that plaintiff allegedly could not have produced the declaration earlier. And as we just discussed, it could not have been produced earlier because it was responding to misstatements made at the end of the administrative process. And that's an important point to make, because what this issue is fundamentally about is about whether arrested beneficiaries have the right to inform the court about misstatements made during the administrative process. Now, if those misstatements are made at the beginning of the process, in an initial claim denial, for example, then the claimant does have an opportunity to respond to it in the form of an administrative appeal, and that can all be sorted out during the administrative process. But when that misstatement comes at the end of the process, which is what happened here, the only way to correct that is by submitting a declaration or evidence in litigation, which is allowed under de novo review. What was the basis for the remand? The basis for the remand was that Blue Shield had not considered medical records that were The only way for claimants to combat these kinds of misstatements is to submit a declaration during the course of litigation. And as I mentioned, as this court has ruled in Mongoluzo Was Dr. Ulrich's records part of the records that Blue Shield had not considered? Blue Shield had part of Intercept's records, but not all of them. My understanding is that there were daily medical records that Blue Shield claimed that it had not received, and so that's what was... So Dr. Ulrich's record, the declaration, was an additional record besides those records which Blue Shield had not considered? Well, Dr. Ulrich's declaration did not attach any further medical records. His declaration was simply an attempt to correct the misstatements. The remand was to have Blue Shield consider the medical records. That did not include Dr. Ulrich's declaration. It did not include a declaration from Dr. Ulrich. Instead, it included a telephonic conversation, which we thought was going one better than a declaration, was to put Blue Shield directly in touch with the folks at Intercept to explain... so that they could explain why the treatment that Nicholas received is medically necessary. And our assumption was that the contents of that conversation would be transcribed accurately, and the outcome was that it was not, and so that's the reason that we submitted the declaration. And it's important to clarify what we're asking for here. If the district court had received the declaration, admitted it into evidence, read it, and said, I don't think this is credible, or I find Blue Shield's doctors are more persuasive on this when I balance it against what Dr. Ulrich is saying, that would have been one thing. But the district court instead refused to consider the declaration at all, wouldn't even read it, and excluded it at trial. Although I should clarify that he did not... I should back up. It's a little more confusing than that because he didn't exclude it at trial. He excluded it in pretrial motions and said he would return to the issue at trial, but then didn't do so. You want to remand so that the judge can review and weigh the potential testimony of the doctor? That's correct. All right. So I'd like to move on now to the issue of medical necessity because this is really the core issue of the case. And in order to determine if the treatment that he received is medically necessary, of course, we have to look at the benefit plan, which defines that term. And that definition includes four criteria, and fortunately we don't have to go through them all because the district court properly found that Nicholas's treatment met the first three criteria. So the only criterion that's at issue is whether the treatment that he received was, quote, furnished at the most appropriate level which can be provided safely and effectively to the patient. And the best evidence on this point, we think, of course, is this declaration from Dr. Ulrich, which the district court excluded, but even without that declaration, the record still shows that Nicholas required the treatment that he was receiving. I should ask, what's the standard here? Because this is basically a pure disagreement with the outcome, and I know you have reasons why you think Judge Carter's ultimate decision was wrong, but we don't look at this de novo. We defer to the findings he made. He is making factual findings, so we would concede that some deference is owed, to be sure. Right. He had a full bench trial of six days, I believe it was? No, I believe it was a single day. Same day. Okay. Sorry about that. Go ahead. That's fine. Judge Carter found that Nicholas could have been safely and effectively treated on an outpatient basis from July 2012 to December 2012. That's the issue, in fact. What's the abuse of discretion about that finding? Well, in order to answer that, let me explain what the residential treatment program he was at, what it was designed to do and how it was set up. The program is designed to step patients down gradually while giving them more freedom. It's an essential part of the program that patients slowly decrease their medication while they're there, which is what happened, and that they slowly integrate into the community, which is what happened. So the facts that were cited by the district court is evidence that his treatment wasn't medically necessary, and those facts included that he was able to attend some school, that he was able to do some part-time work, that he was doing some volunteering in the community. He wasn't running away anymore, and he was decreasing his drugs. But this was, in fact, an essential part of the program. So what the district court was doing was citing facets of the program that were designed to improve his health as reasons for why he did not need the treatment. And the record shows that this treatment, in fact, was successful. At the end of his treatment, he was able to return to school full-time. He hasn't had to reenter residential treatment since, and one would think that everyone would be happy with that outcome. This is not to say that it wasn't an easy program for Nicholas. The record shows multiple instances of problems that he was having. He obviously had a history of running away from the program. He didn't run away during the time period in question, but he had just returned from running away from the program two weeks before benefits were stopped. He did have a part-time job, but he wasn't able to hold it down. He relapsed with drugs and alcohol during the time period at issue here at least twice that we know of. And he continued with the same problems that he had before with regard to aggression. He was anxious, depressed. He was resistant to treatment. And it's for these reasons that we contend that district court erred and that the treatment was medically necessary. So Blue Shield argues that Nicholas was doing well in the treatment as an argument for why it wasn't medically necessary. And it's true that he eventually did well in the treatment, but doing well in treatment is not a reason to deny someone's claim for benefits. And it's worth noting that this kind of argument creates a catch-22 with which mental health patients are often familiar. If they go into treatment and the treatment isn't working and they're not succeeding, insurance companies will often deny their claims because it's ineffective treatment and they're not going to pay for it. But that's not the issue here. Right. And we have the contrary situation here, which is if someone goes into treatment and they're successful, instead of being rewarded for their success, the insurance company tells them, you did so well there that you didn't need the treatment at all. You could have had something less than that. So it creates sort of a no-win situation for claims. So the distinction here is whether he was entitled to residential mental health treatment versus other mental health treatment. That's correct. And what Blue Shield is arguing is that he could have had outpatient treatment. And it's worth stressing the difference between residential treatment and outpatient treatment. Residential treatment is you're living there at the facility. You may not need around-the-clock attention, but you have around-the-clock support if problems come up. And in outpatient treatment, you're living on your own, you're on your own. You're responsible for getting yourself to treatment and being responsible for your own care. And there's no one around if there are any lapses or slip-ups. So what Blue Shield is asking for is, and what the district court eventually agreed with, was a pretty significant step down. So Nicholas was sent to home to get outpatient treatment? Or the medically necessary determination was that it was no longer medically necessary because outpatient treatment at home would suffice. He could have done that, right. And as the record shows, that hadn't worked. That type of outpatient treatment wasn't successful, and that was why he needed to go into residential treatment in the first place. I see I'm a little short on time, so I'd like to address the fees issue if I could really quickly. There are actually two issues on the fees. Blue Shield has cross-appealed and said that no fees should be awarded at all. This is an abusive discretion standard. I'm sorry? This is an abusive discretion standard. Yes, it is. It's whether the district court abuses it. Yes, that's correct. And I think Blue Shield's argument can be dealt with fairly quickly because it's foreclosed by the Supreme Court's decision in Hart. What Hart says is- Or you prevailed in some sense. You won an issue or two after the trial, so that triggers a fee payment, right? Right. And that's what Hart says. Hart says if the outcome of the litigation is a success, then the claimants entail the fees. And clearly because- You don't like Judge Carter's reduction, though. He knocked it back. That's right, and I'll address that now. The difficulty with that is we recognize that we had not achieved everything that we wanted in this lawsuit. There was a period of time in the litigation that was successful in which we achieved a remand and eventually got a month of benefits added on. And there was a part of the litigation that was not successful, and we concede that. So what plaintiffs did was we limited our request for fees only to that time period in which we had had success. And we did not ask for any fees with regard to the remainder of the litigation, which included- You only asked for fees from January through July? We only asked for fees for the time period of the litigation in which we had been successful. In other words, prior to the remand? That's correct. Oh, okay. Up until the point where Blue Shield paid the additional month of benefits. And the idea was, obviously, we understand that we didn't have complete success, so we are going to unilaterally reduce our fees to take that into account. And what the district court did was reduce that already reduced amount by approximately 70%. And our contention is that that exceeded the district court's discretion and effectively created a double penalty. I see my time's up. The court doesn't have any further questions. Well, next time you'll put in for the whole amount. Well, and we raised that in our brief. That's a policy problem, right? It creates an incentive for attorneys to augment their fee request for fear that there's going to be a further reduction. So, thank you. Thank you, counsel. Good morning, Your Honors. May it please the Court, I'm Joanna McCallum for OLE Blue Shield. I want to respond, first of all, to some of the discussion about Dr. Ulrich's declaration. The appellant has said it couldn't have been put in earlier during the administrative proceedings or at any earlier point because it was necessary to respond to a misstatement that Blue Shield's reviewer allegedly made. You'll have to speak up a little, Ms. McCallum. When Dr. Millman from Blue Shield talked to Dr. Ulrich post-remand, later in his report, he characterized something that Dr. Ulrich had said in a way slightly different from the way that Dr. Ulrich characterized it. That is not an excuse for putting in that declaration at that late point, or at least not an excuse relevant to the issues here, because that dispute between the two of them over what was said has nothing to do with the medical necessity of the treatment, which is the issue. What was the dispute over? What alleged misrepresentation? I think Dr. Millman said, I don't have the quote right in front of me, but the dispute was over the characterization of a statement by Dr. Ulrich about how insurance companies treat coverage for facilities similar to Intercept. I think if you look in the briefing, we have the two quotes. It's kind of an illusory dispute anyway. As I read it, they're saying more or less the same thing. But even if it were different, I mean, assume for the sake of argument, they were saying two different things, and Dr. Ulrich really did need to correct that. It still has nothing to do with whether Nicholas was so severely ill in July through December that he needed 24-hour residential care. Could you indulge me for a second and give me the substance of what Dr. Ulrich's declaration said? Yes, on that point or in general? In general. In general, he listed his conclusions, four or five conclusions, to the effect that if Nicholas had not been in residential treatment for the five-and-a-half-month period towards the end of his stay, he likely would have relapsed into drug and substance abuse. That's on pages 3201 and 3202 of the excerpts, paragraph 8. Well, wasn't that an answer to Blue Shield's claim that inpatient treatment was not necessary between July and December of 2012? That is an attempt to respond to that, but that has nothing to do. Your Honor had asked about why the declaration had not been submitted or provided much earlier on the process, and the answer was because he only put in the declaration to clarify a misstatement. That paragraph 8 has nothing to do with the purported misstatement. The misstatement is completely different. The statement is addressed in paragraph 7 of the declaration. So there's no excuse for the appellant not putting in this declaration or the information in this declaration earlier. Moreover, even before you get to whether there was an excuse for the delay, they haven't addressed whether it was necessary. This Court has held that it is an abuse of discretion for a district court to consider evidence outside the administrative record unless the circumstances clearly establish that evidence is necessary. And there was not even any discussion, and there's barely any discussion of it in the briefing, about whether the facts stated in that declaration were necessary. In fact, they're very similar to what was in the medical records already. You know, the district court did say the district court went through all the medical records. It conducted a de novo review. It made extensive actual findings that went through all of the evidence, all the detailed steps along the way of Nicholas's condition and the improvements. Well, the medical records said what had happened to Nicholas while he was in inpatient treatment. Yes. Dr. Ulrich's declaration was what would have happened to him had he not had inpatient treatment, and that issue came up only because Blue Shield said inpatient treatment was not necessary. Well, Blue Shield always said inpatient treatment was not necessary for that period of time. Blue Shield had always said that. That was the dispute during the administrative proceedings as well. Oh, so the issue as to the extent to which inpatient treatment was necessary was at issue in the administrative hearing. Oh, yes, that was the issue. So this is sort of an argument. If it hadn't been given, this would have happened, and that could have been brought up in the administrative hearing. Yes, it could easily have been brought up in the administrative hearing. Also, another fact is once the district court granted Blue Shield's request to remand the matter to consider voluminous additional medical records that had not been available to Blue Shield during the administrative process, despite asking for them repeatedly, Blue Shield went beyond that remand order and asked appellant's counsel, while we're considering the rest of these records, is there anything else out there you want us to consider? They said, yes, please talk to Dr. Ulrich. So Blue Shield did talk to Dr. Ulrich. That was another opportunity for Dr. Ulrich to express himself on the medical necessity of the treatment, and he did not. Can I go through the timeline a little bit? I think this is relevant to the fees issue as well. There was a lawsuit, and the district judge on the basis of the administrative record initially remanded, and Blue Shield essentially conveyed or provided an extra month of benefits. Dissatisfied with that, the case was refiled, and then the bench trial occurred and was resolved in your client's favor. Is that essentially the way it worked out? More or less. It wasn't refiled. It had been, I think, administratively closed. Stayed. Yeah, yeah, yeah. Yes, it originated because during the administrative process, Blue Shield had repeatedly told the Potters we don't have enough medical records. Every EOB, every letter, over and over and over. When Blue Shield denied the claim and then denied the appeal, it said several times, we're denying this for lack of medical necessity because we do not have the records to establish medical necessity, but if you will give us the records, we will reopen it. Right, but the district court found that there was confusion and miscommunication on both sides. It was not entirely the Potters' fault. The district court found miscommunication on both sides and that it was not either side's fault. So at worst, there was miscommunication. From Blue Shield's perspective, it was repeatedly saying we don't have enough records. Give us the records. We'll look at it. So once the litigation was filed, the plaintiffs produced and Intercept produced hundreds and hundreds of pages, like a total of 700 additional pages of medical records that had not been provided to Blue Shield before. There was a dispute about what happened, what should happen. Blue Shield asked the district court to remand it so Blue Shield could consider those records in the first instance. Plaintiffs vigorously opposed. Blue Shield essentially won that issue and then it reconsidered. It had reviews conducted. It talked to Dr. Ulrich. It decided to give another month of benefits, not because they were medically necessary, but for a reason relating to stepping down and transitioning out of the treatment. Then the case was reopened to litigate the remaining period, July through mid-December. So that is the chronology. Another thing I wanted to address is Appellant has said the district court's factual findings are entitled to some deference. The standard is clear error, meaning this court can't reverse those factual findings unless it has a firm conviction that the district court made a mistake. So it's not simply starting with a little bit of deference. It's very extreme deference. As I mentioned, the district court engaged in a major review of all these thousands of pages of medical records. It set forth its findings very clearly. It was the plaintiff's burden at all times to prove that the residential treatment was the most appropriate treatment during that period. There's no evidence in the record that Nicholas needed 24-hour care during that period of time. He was going to work. He was going to school. He was improved. This dispute is not about whether he needed any care. It's only about whether he needed 24-hour residential care during the time that he was out in the community improving. And the fact that he was doing well in treatment is not the standard. The standard is did he need it and did the plaintiffs carry the burden to show that he needed it. Finally, on the issue of fees, the standard by the Supreme Court is some success on the merits that is not trivial. The fact that plaintiffs got an additional month of benefits, that is not success in the lawsuit, because had they given us the medical records that we wanted in the beginning, we very likely would have paid that additional month before the lawsuit was even filed. So the lawsuit is not what led to that. And, in fact, as I mentioned, the plaintiffs vigorously objected to remand, to allow Dishield to consider those records. I think that's why I think the district court followed the law and found some success because the benefits were provided after remand but reduced them substantially because the plaintiff didn't even want the remand to begin with and then did not succeed at trial. I think that's what the balance was. That could be the way the thought process went. In a way, you're ahead on that issue, but anyway. Well, it's true. We certainly think there was no abuse of discretion in reducing the fees at a minimum. As we noted in our briefs, they did get an extra month of benefits paid, but it was not due to their efforts. So the notion that the pre-remand- Well, that's contrary to the court's finding. The district court said the court recognizes that much of plaintiff's pre-remand work contributed to his limited success on remand. A moderate award balancing these realities is reasonable. Well, we do believe reducing the award was at a minimum reasonable, certainly not an abuse of discretion. We would go further and say no fees were available. But the plaintiff absolutely did prevail on the issue of remand, right? No, because it was Blue Shield that wanted remand and the plaintiff opposed remand. The plaintiff did not want it remanded. The plaintiff wanted the district court to consider the new medical records for the first time. I see. Blue Shield wanted the opportunity to go through, apply its expertise, go through the administrative process with those records, and it requested that, and the court granted Blue Shield's request. So had the plaintiff gotten his way on that issue, it would not have been remanded. The district court would have decided in the first instance what those records meant. I'm puzzled by why Blue Shield didn't have the records and why the plaintiff did, because at least my experience is that whenever you go in the hospital or go to the emergency room, you sign a form allowing the insurer to get records. That was not the case here? I don't know about the signing the form. Blue Shield had some records, but it did not have all of the records, and it did not have the level of detailed records that it needed to evaluate the medical necessity of this treatment. Blue Shield wanted the records. It asked for the records. We cited in our briefs many, many places in the record, the court record, where Blue Shield asked for the records and said, if you give us the records, we'll look at this again. So I don't have an answer for why Blue Shield didn't have the records. It wanted them and it needed them, and once it finally got them, it reevaluated them. It came out in the same ultimate place anyway. I have a question about this case. Is the entire case under seal, or is it just the medical records that are under seal? It's just the medical records that are under seal. The administrative record was filed under seal, and when plaintiffs submitted the excerpts, most of it was under seal. Plaintiffs' brief didn't put any of the briefing under seal. I think our brief did. But, yeah, the medical records are under seal. If there are no further questions, I'll conclude. Who wanted this filed under seal? I think the plaintiff, because it's Nicholas's medical records. Well, yeah, so that's what I found odd, was that your brief is sealed, the Blue brief isn't. Our brief is sealed because it was quoting. The places that are redacted in our brief are quotes about Nicholas from his medical records. Okay, all right. So we weren't sure what to do with that, since the appellant's brief had just quoted all those things without redacting them, but we thought that was our obligation under the borders. Okay. Thank you. Thank you. Very briefly, I'd just like to address the fees issue. And Blue Shield's argument is that plaintiff didn't have any success on the merits because the case was remanded pursuant to its motion, arguing that it had asked for the remand. But it's important to remember that Blue Shield's motion was primarily styled as a motion to exclude all these medical records. And on that, it did not succeed, and eventually the court did end up reviewing those records. So, of course, plaintiff opposed that part of the motion. Plaintiff also opposed the remand part of the motion because it was not plaintiff's position that Blue Shield shouldn't review the documents. It was that a remand wasn't necessary for that purpose. You know, Blue Shield is free to review those records at any time without plaintiff's permission or the district court's permission. It's a fiduciary under ERISA. It should be reviewing those documents, regardless of whether the district court makes them do it or not. And our position was also that the district court was free to review those records under its de novo review. So our issue was not that Blue Shield shouldn't be reviewing these records. It was more that it would cause an unnecessary delay. And it did, in fact, cause a delay. Counsel, you're over your time limit. Thank you. Thank you very much. Potter v. Blue Shield will be submitted. And we'll take up Mickelson, 2151 Mickelson v. Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints.
judges: Wardlaw, Bea, Murphy